UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MILTON D. RICKMAN,

        Plaintiff,           Case No. 1:07-cv-197

v.                                Honorable Janet T. Neff

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On April 17, 2007, this Court ordered partial service of Plaintiff's complaint on Defendants Tony Trierweiler, Mark Christenson, and Kenneth Shutter. On June 21, 2007, Defendants Trierweiler and Christenson filed a motion for summary judgment (docket # 14) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket # 20) on or about July 26, 2007. Upon review, I recommend that Defendants' motion for summary judgment be granted in part and denied in part.

### Applicable Standard

        Summary judgment is appropriate when the record reveals that no genuine issues exist as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for

determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Facts

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Carson City Correctional Facility (DRF). In his *pro se* complaint, he sues DRF Deputy Warden Tony Trierweiler, DRF Inspector Mark Christenson, and Warren Police Detective Kenneth Shutter.[1]

Plaintiff claims that Defendants wrongfully extracted his DNA from a buccal (inside the cheek) swab when he already had provided several DNA samples to the Wayne County Sheriff's Department on December 5, 2003. On September 27, 2004, Inspector Christenson escorted Plaintiff to meet with Detective Shutter. At that meeting, Shutter requested a buccal swab from Plaintiff as part of an ongoing criminal investigation. Plaintiff, however, refused to consent to the swab because he already had submitted several DNA samples in 2003. Plaintiff argued that Shutter could access his previous DNA sample on the Michigan State Police DNA database. As a result, Plaintiff was ordered to wait outside.

---

[1] Plaintiff's original complaint also named the MDOC. Prior to service of the complaint, the Court dismissed the MDOC on the basis of sovereign immunity (docket ##2, 3).

3

Shortly thereafter, Inspector Christenson escorted Plaintiff into an office with Defendants Trierweiler and Shutter. Deputy Warden Trierweiler issued a direct order to Plaintiff to submit to the buccal swab or be placed in "indefinite disciplinary detention." Again, Plaintiff refused to consent and insisted that Defendants should check his DNA samples on the Michigan State Police DNA database. Trierweiler replied, "[W]e don't have to." (Compl. at 8.) When Trierweiler instructed Christenson to "lock [Plaintiff's] black ass up indefinitely," Christenson handcuffed Plaintiff. (Compl. at 8.) Defendants then "violently" threw Plaintiff to the floor and forcibly opened his mouth. (Compl. at 9.)

Plaintiff argues that under the DNA Identification Profiling Act, MICH. COMP. LAWS § 28.171 *et seq.*, the Michigan State Police permanently retains the DNA identification profile of an individual convicted of a felony or an attempted felony. Plaintiff believes that the Wayne County Sheriff's Department sent his 2003 DNA sample to the Michigan State Police for inclusion in the Michigan DNA database. Further, Plaintiff states that he is not required to provide another DNA sample under MICH. COMP. LAWS § 750.520m(2). MICH. COMP. LAWS § 750.520m(2) provides:

> if at the time the person is convicted of or found responsible for the violation the investigating law enforcement agency or the department of state police already has a sample from the person that meets the requirements of the DNA identification profiling act, . . ., the person is not required to provide another sample . . . .

Plaintiff argues that the forced extraction of his DNA by Defendants violated his rights under the Fourth and Fifth Amendments and under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Plaintiff also alleges that the DNA sample was taken with unnecessary force. Further, he raises claims of racial discrimination and intentional infliction of emotional distress against Defendants.

For relief, Plaintiff requests declaratory and injunctive relief, and monetary damages and costs.

## Discussion

I.      Exhaustion Standard

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). Additionally, a plaintiff must fully exhaust his administrative remedies before filing a complaint. *See Freeman*, 196 F.3d at 645. Further, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006) (emphasis added). Thus, in order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922 (2007); *Woodford*, 126 S. Ct. at 2386. "Compliance with the prison grievance procedures, therefore, is all that is required by the PLRA to properly exhaust." *Jones*, 127 S. Ct. at 922.

In interpreting the PLRA, it is appropriate to look for guidance to the substantively similar exhaustion rules applicable in habeas cases. *Woodford*, 126 S. Ct. at 2384. In the habeas corpus context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel*, 526 U.S. 838,

5

845 (1999). "To 'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . . ." *Id.* at 848 (citation omitted; emphasis in original). In habeas, the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default. *Woodford*, 126 S. Ct. at 2387. To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003).

Under the procedural default component of § 1997e(a), an inmate's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials in the last level of review actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 (2006); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination whether a prisoner has 'proper' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.") Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the Federal Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

## II. MDOC Grievance Policy

Defendants Trierweiler and Christenson claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.[2] Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford*, 126 S. Ct. at 2386. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[3], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of

---

[2] At various points in their argument, the moving Defendants also mention the lack of exhaustion against Defendant Detective Shutter. The motion and brief, however, were filed on behalf of the MDOC Defendants only, and Defendant Shutter has never attempted to join the motion. Defendant Shutter is not represented by the Attorney General and Defendants Trierweiler and Christenson have no authority to represent his interests. Further, because the MDOC grievance policy does not apply to persons outside the control of the MDOC, Plaintiff had no available administrative procedure to exhaust with respect to Shutter. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ F(4) (providing that grievances may not be filed regarding "[i]ssues not within the authority of the Department to resolve.").

[3] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

7

becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

### III. Grievance DRF 04-10-1560-18A

Plaintiff filed one grievance related to the allegations of the complaint, DRF 04-10-1560-18A, and pursued it through Step III of the grievance process. Defendants argue that Plaintiff's complaint against them should be dismissed for failure to exhaust administrative remedies. First, they argue that Plaintiff was not entitled to grieve the execution of a court order, as it is not within the authority of the MDOC to resolve, as set forth in PD 03.02.130, ¶¶ E and F(3). Second, they contend that, in violation of PD 03.02.120, ¶ T, the grievance failed to name all Defendants in the Step I grievance, naming only Defendant Trierweiler. Third, they assert that the appeal to Step II was untimely under PD 03.02.130, ¶ U.

#### A. Not entitled to grieve policy

In their first argument for summary judgment, Defendants contend that Plaintiff's claims should be barred because they are not subject to the grievance policy. Specifically, Defendants assert that, under PD 03.02.130, ¶ E, a prisoner may not grieve the content of a policy or procedure. Further, under PD 03.02.130, ¶ F(3), "[i]ssues not within the authority of the Department to resolve" are non-grievable. *Id.* According to Defendants, it is not within the Department's authority to disobey a court-issued search warrant. As a consequence, Defendants argue that Plaintiff did not exhaust his administrative remedies because he was not entitled to do so under the grievance policy.

9

Defendants' argument is without merit. Under the PRLA, a prisoner must exhaust only such administrative remedies as are *available*. *See* 42 U.S.C. § 1997e(a); *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23. Accepting Defendants' own representations as true, the prison grievance process was not available to Plaintiff with respect to his claims that he was not legally required to give a second sample of his DNA. He therefore must be considered to have exhausted available administrative remedies with respect to that claim. The argument, however, is irrelevant to Plaintiff's claims that the taking of the DNA sample was conducted with excessive force and that defendants acted in a racially discriminatory manner and intentionally inflicted emotional distress. Such claims clearly are grievable under PD 03.02.130.

### B.     Failure to name all Defendants in Step I grievance

In his Step I grievance, Plaintiff named Defendant Trierweiler and additional individuals, including the "Warren County Police officer[]," as well as Mary Robledo and Lori Gidley, who have not been named as Defendants. At Step III, Plaintiff named the individuals named at Step II and Warden Kurt Jones, who is not a Defendant in this action. In none of the grievances did Plaintiff name Defendant Christenson.

Defendants argue that MDOC policy required that all individuals be named in the Step I grievance. I disagree. MDOC Policy Directive 03.02.130, ¶ T, does not require that Plaintiff name all Defendants in a Step I grievance. The policy directive requires that the grievant use certain forms to file a Step I, II or III grievance. The policy directive also provides that certain information be included in a grievance, i.e. "the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how) . . . ," but does not specifically state that the information must be in a Step I

10

grievance. *See* MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ T (emphasis in original). The Sixth Circuit previously required a prisoner to specifically mention the involved parties in the Step I grievance. *See Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003). This is no longer the case. The Supreme Court in *Jones*, 127 S. Ct. at 922, abrogated the Sixth Circuit's rule in *Burton,* and required only that inmates follow the prison's requirements for exhaustion.

Regardless, the argument is not dispositive of the matter at hand. First, no genuine issue exists that Plaintiff named Defendant Trierweiler in all three steps of the grievance process. Defendants' argument, therefore, is of no benefit to Defendant Trierweiler. *See Jones*, 127 S. Ct. at 925-26 (rejecting concept of total exhaustion).

Second, at no step of the grievance process did Plaintiff name Defendant Christenson. In Plaintiff's sworn response to Defendants' motion, he avers that the Step I response itself listed Defendant Christenson, thereby identifying him as a person involved in the incident. Plaintiff states that before he filed his Step I grievance, he was unaware of Christenson's identity, though he included in his grievance certain "unnamed" officers. Plaintiff argues that, by mentioning Christenson in the grievance response, Defendants demonstrated that they were aware of Christenson's involvement. He therefore contends the grievance must be considered exhausted as to Defendant Christenson.

I disagree. While Christenson was identified by the Step I respondent as the person to whom the Warren Police Detective submitted his search warrant, Christenson never was identified by Plaintiff as having engaged in unconstitutional or improper conduct. Plaintiff, despite having been made aware of Christenson's identity at Step I, never attempted to include Christenson in his grievance. As a consequence, the claims against Defendant Christenson are unexhausted. Defendant

11

Christenson is entitled to summary judgment on Plaintiff's claims of excessive force, racial discrimination and intentional infliction of emotional distress.

### C. Untimely appeal to Step II

Defendants next argue that Plaintiff filed his appeal to Step II more than five days after receiving the Step I response to his grievance, in violation of PD 03.02.130, ¶¶ U, DD. As a consequence, Defendants contend that the grievance was untimely and Plaintiff failed to "properly exhaust" his grievance within the meaning of PD 03.02.130, in violation of the Supreme Court's decisions in *Woodford*, 126 S. Ct. at 2387, and *Jones*, 127 S. Ct. at 922.

In *Woodford*, the Supreme Court held that the exhaustion requirement was not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy. 127 S. Ct. at 2386. In this case, however, neither the Step II nor Step III grievance reviewers rejected Plaintiff's grievance as untimely. Instead, the grievance was addressed on the merits. While Plaintiff may have failed to timely file his Step II grievance, prison officials did not rely on the default by rejecting the grievance as untimely. *See Johnson*, 418 F.3d at 1159; *Spruill*, 372 F.3d at 222; *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied upon by the state courts). When an administrative agency addresses an inmate's grievance on the merits, then the agency has found that the inmate satisfied the required critical procedural rules. *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly.") Defendants' third exhaustion argument is without merit.

**Recommended Disposition**

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #14) be granted in such part as it raises claims against Defendant Christenson regarding the use of excessive force, racial discrimination, and intentional infliction of emotional distress. I recommend that the motion be denied in all other respects.


    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 11, 2008


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).