UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILTON D. RICKMAN,

    Plaintiff,

v.    Case No. 1:07-cv-197
    HON. JANET T. NEFF

MICHIGAN DEPARTMENT OF
CORRECTION, et al.,

    Defendants.
_____/

### REPORT AND RECOMMENDATION

    Plaintiff Milton D. Rickman filed this prisoner 42 U.S.C. § 1983 action against the Michigan Department of Corrections, Warden Anthony Trierweiler, Inspector Mark Christenson, and Detective Kenneth Shutter. Defendants Michigan Department of Corrections and Mark Christenson were previously dismissed by this Court. Plaintiff claims that Defendants wrongfully extracted his DNA from a buccal (inside the cheek) swab when he already had provided several DNA samples to the Wayne County Sheriff's Department on December 5, 2003. On September 27, 2004, Inspector Christenson escorted Plaintiff to meet with Detective Shutter. Defendant Trierweiler states that this actually occurred on September 21, 2004. At that meeting, Shutter requested a buccal swab from Plaintiff as part of an ongoing criminal investigation. Plaintiff, however, refused to consent to the swab because he already had submitted several DNA samples in 2003. Plaintiff argued that Shutter could access his previous DNA sample on the Michigan State Police DNA database. As a result, Plaintiff was ordered to wait outside.

Shortly thereafter, Inspector Christenson escorted Plaintiff into an office with Defendants Trierweiler and Shutter. Defendant Trierweiler issued a direct order to Plaintiff to submit to the buccal swab or be placed in "indefinite disciplinary detention." Again, Plaintiff refused to consent and insisted that Defendants should check his DNA samples on the Michigan State Police DNA database. Trierweiler replied, "[W]e don't have to." (Compl. at 8.) When Trierweiler instructed Christenson to "lock [Plaintiff's] black ass up indefinitely," Christenson handcuffed Plaintiff. (Compl. at 8.) Defendants then "violently" threw Plaintiff to the floor and forcibly opened his mouth. (Compl. at 9.) Defendants disagree with Plaintiff's version of the facts. Defendants assert that Detective Shutter had a search warrant for a DNA Buccal Swab containing Plaintiff's saliva and that Plaintiff complied with the warrant without the use of any force or the need for handcuffs.

Plaintiff argues that under the DNA Identification Profiling Act, MICH. COMP. LAWS § 28.171 *et seq.*, the Michigan State Police permanently retains the DNA identification profile of an individual convicted of a felony or an attempted felony. Plaintiff believes that the Wayne County Sheriff's Department sent his 2003 DNA sample to the Michigan State Police for inclusion in the Michigan DNA database. Further, Plaintiff states that he is not required to provide another DNA sample under MICH. COMP. LAWS § 750.520m(2). MICH. COMP. LAWS § 750.520m(2) provides:

> if at the time the person is convicted of or found responsible for the violation the investigating law enforcement agency or the department of state police already has a sample from the person that meets the requirements of the DNA identification profiling act, . . ., the person is not required to provide another sample . . . .

Plaintiff argues that the forced extraction of his DNA by Defendants violated his rights under the Fourth and Fifth Amendments and under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Plaintiff also alleges that the DNA sample was taken with unnecessary

force. Further, he raises claims of racial discrimination and intentional infliction of emotional distress against Defendants.

Presently before the Court are Defendants' motions for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed responses and the motions are ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that plaintiff cannot establish a violation of the Fourth Amendment. Prisoners have fewer expectations of privacy than free citizens. *United States v. Smith*, 526 F.3d 306 (6th cir. 2008). Defendant Kenneth Shutter is a Warren Police Department Detective. Plaintiff was a suspect in a rape investigation that Defendant Shutter was conducting. Defendant Shutter obtained a search warrant for DNA Buccal Swabs, containing plaintiff's saliva. Defendants assert that Plaintiff allowed the execution of the search warrant without incident. Plaintiff asserts that he was assaulted by Defendants. There is no question that Plaintiff's Fourth Amendment rights were not violated. Defendant Shutter obtained the search warrant to get a DNA sample after it was discovered that DNA evidence found at the rape crime scene matched the DNA through the Michigan Database with "Mailton Douglas Rickman sid #1646855H who is in custody at the Carson City Correctional Facility." Plaintiff has not challenged the reasonableness of the search warrant. Plaintiff has not asserted that there lacked probable cause for the warrant. In the opinion of the undersigned, such a challenge would be clearly baseless. Plaintiff argues that he should not have to give a second sample because he already gave a sample upon his incarceration under Mich. Comp. Laws § 750.520 for DNA profiling purposes. However, the search warrant did not authorize a DNA sample under a Michigan Statute for profiling purposes. The warrant was issued because Plaintiff was a suspect in a rape crime that was under investigation. Plaintiff became a suspect when it was discovered that his DNA profile sample matched the DNA found at the crime scene.

Plaintiff argues that the execution of the search warrant violated his Fourth Amendment and substantive due process rights. There exists some dispute as to how the sample was taken. Plaintiff claims that force was used. Defendants claim that no force was used because Plaintiff allowed the execution of the warrant without incident. The buccal swab required only minimal intrusion, by simply placing the swab in Plaintiff's mouth to obtain a saliva sample. In the

opinion of the undersigned, Plaintiff's Fourth Amendment rights could not have possibly been violated. What amounts to an unnecessary and wanton infliction of pain varies according to the need for the application of force, the nature of the injury and all other circumstances surrounding the incident. *See Whitley v. Albers*, 475 U.S. 312, 320 (1986). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the Supreme Court explained that, in considering the need for the application of force, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. Accordingly, it is clear that the use of reasonable force to execute a search warrant does not violate the Fourth Amendment or substantive due process. *Sanders v. Coman*, 864 F. Supp. 496 (E.D. N.C. 1994). In the opinion of the undersigned, Plaintiff has not established that Defendants used excessive force in executing the search warrant.

Plaintiff asserts that his equal protection rights were violated because he was the only inmate that had to give a DNA sample. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).

A claim that Plaintiff was treated one way and everyone else was treated another way, by itself, is not sufficient to state an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993). Rather, Plaintiff must show that he was victimized by some suspect classification. *Id.* Absent some allegation or proof that the law was applied

differently to Plaintiff because of race, gender, age, or some other improper classification, no equal protection claim has been stated. *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte, J., concurring); *see also Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 282 (6th Cir. 1991), *cert. denied*, 503 U.S. 945 (1992) (a person's conduct is legitimate for purpose of the equal protection clause even though it may have been mean-spirited, ill-considered, or other unjustifiable, objectionable, or unreasonable, so long as it was not motivated by class-based discrimination).

Plaintiff cannot establish that his equal protection rights were violated. Plaintiff cannot show that he was treated differently than any other prisoner. Plaintiff's assertion that he was the only prisoner required to submit a DNA sample does not support his claim. Defendant Shutter had a warrant for a buccal swab sample from Plaintiff. Defendant Trierwelier had to allow Defendant Shutter to complete the requirements of the warrant.

Defendants move for summary judgment based upon qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations

by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the Plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S.

226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, Plaintiff has not established that defendant's violated any of his in clearly established rights.

To the extent that Plaintiff is claiming his state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims. Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727(1966); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727(1966).

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment. Accordingly, it is recommended that Defendant Shutter's Motion for Summary Judgment (Docket #25) and Defendant Trierweiler's Motion for Summary Judgment (Docket #32) be granted and that this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley  
    TIMOTHY P. GREELEY  
    UNITED STATES MAGISTRATE JUDGE

Dated:   December 16, 2008